IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**DAVID ERIC SMITH, individually and on behalf of all wrongful death beneficiaries of LAUREN LEE SMITH, DECEASED, and the QUICK CHILD she was carrying at the time of her death,**                     **PLAINTIFF,**

v.                                                                                                                              **CIVIL CASE NO:**
                                                                                                                                 3:20cv187-DMB-JMV

**INDIVIOR INC. f/k/a RECKITT BENCKISTER PHARMACEUTICALS INC; RECKITT BENCKISTER HEALTHCARE (UK) LTD; INDIVIOR PLC, f/k/a RECKITT BENCKISTER GROUP plc; INDIVIOR SOLUTIONS, INC., MYLAN INC, MYLAN PHARMACEUTICALS INC., and HIKMA LABS INC., f/k/a/ ROXAND LABORATORIES, INC.**                                                              **DEFENDANTS.**

## COMPLAINT

## JURY TRIAL DEMANDED

COMES NOW, the Plaintiff, David Eric Smith, individually and on behalf of all wrongful death beneficiaries of Lauren Lee Smith, and her quick child, by and through the undersigned counsel of record, and states unto this Honorable Court a cause of action against Indivior Inc. f/k/a Reckitt Benckister Pharmaceuticals Inc., Reckitt Benckister Healthcare (UK) Ltd; Indivior PLC f/k/a Reckitt Benckister Group, plc, Indivior Solutions, Inc., Mylan Inc, Mylan Pharmaceuticals, Inc. and Hikma Labs, Inc., f/ka Roxand Laboratories, Inc., and would show unto the Court as follows:

1

## NATURE OF THE CASE

1. Lauren Lee Smith suffered from opioid addiction. In her effort to remedy her opioid addiction and promote and save her overall health and enjoyment of life, Lauren sought and received medical care, was prescribed the highly addictive drug Suboxone, suffered a relapse and ultimately died while bearing a quick child following a drug overdose.

2. Suboxone is an opioid drug marketed as a treatment of opioid addiction/dependence. However, use of Suboxone in its various forms can cause serious harm including addiction, compromised cardiac function, compromised respiratory function, overdose and death.

3. Plaintiff Smith brings this action against the Defendants asserting claims for negligence, product/strict liability in tort, failure to warn, intentional and/or grossly negligent misrepresentation, fraudulent concealment, breach of warranty, breach of express warranties, breaches of implied warranties of fitness and merchantability and gross negligence against all parties that either manufactured, designed and/or distributed Suboxone for the wrongful deaths of Lauren and her child.

## PARTIES

**PLAINTIFFS**

4. Plaintiff, David Eric Smith, ("Plaintiff" or "Smith") is over the age of eighteen and a resident citizen of Union County, Mississippi. Smith files this action individually based on his personal loss of his wife, Lauren Lee Smith ("Lauren") and the quick child ("child") she was bearing at the time of her death. Smith also brings this action as next of kin on behalf of his wife, Lauren, and on his child she was bearing at the time of her death, proximately caused by the prescription drug Suboxone® ("Suboxone") addiction and/or its generic equivalent, co-

2

formulated buprenorphine hydrochloride and naloxone hydrochloride dehydrate ("co-formulated buprenorphine/naloxone").

**DEFENDANTS**

5. Indivior Inc. f/k/a Reckitt Benckiser Pharmaceuticals, Inc. ("Reckitt") is a Delaware corporation with its principal place of business located at 10710 Midlothian Turnpike, Suite 430, Richmond, Virginia 23235 and a Mississippi registered agent in Madison, Mississippi.

6. Indivior Inc. is a wholly-owed subsidiary of Indivior PLC. Indivior Inc. is engaged in the development, manufacture and sale of pharmaceuticals, including Suboxone, and health care products and services throughout the United States and is in whole or in part responsible for some or all of the conduct alleged in this Complaint and attributed to Reckitt.

7. Defendant Reckitt Benckiser Healthcare (UK) Ltd. is a British corporation Incorporated under the laws of England and Wales, with its registered office located at 103-105 Bath Road, Slough, Berkshire, SL1 3UH. This defendant is engaged in the development and manufacture of pharmaceuticals including Suboxone in the United States and Mississippi.

8. Defendant Indivior PLC, was formerly part of Reckitt Benckiser Group, plc, and is a British corporation incorporated under the laws of England and Wales, with its registered office located at 103-105 Bath Road, Slough, Berkshire SL1 3UH. This defendant is engaged in the development, manufacture and sale of pharmaceuticals, including Suboxone, throughout the United States. Indivior PLC is the successor in interest to Reckitt Benckiser Group plc. and owned, controlled, managed and operated Indivior after or about December 23, 2014. Indivior Inc. and Indivior PLC are collectively referred to as "Reckitt."

9. Mylan, Inc., is a corporation incorporated in the state of Pennsylvania and has a

3

registered agent in Flowood, Mississippi.  Mylan, Inc. ("Mylan"), is a pharmaceutical manufacturer which produced and produces generic forms of Suboxone.

10. Mylan Pharmaceuticals Inc., is a corporation incorporated in the state of West Virginia and has a registered agent in Flowood, Mississippi.  Mylan, Inc. ("Mylan"), is a pharmaceutical manufacturer which produced and produces generic forms of Suboxone.

11. Hikma Labs Inc, f/k/a Roxand Laboratories, Inc., ("Hikma") is a corporation incorporated in the state of Nevada with a registered agent in Flowood, Mississippi.

**OVERVIEW**

12. The Drug Addiction Treatment Act of 2000 was codified by Title XXXV, §3502 of the Children's Health Act.  This Act permits physicians who meet certain qualifications to treat opioid addiction with Schedule III narcotic medications.  However, Suboxone is the only medication approved by the Food and Drug Administration for that indication, meaning that Suboxone was the only drug impacted by the Drug Addiction Treatment Act of 2000.

13. Reckitt heavily lobbied Congress for the passage of the Drug Addiction Treatment Act of 2000 because it changed the law from requiring narcotics used to treat opioid addiction to be administered in highly regulated clinics (such as methadone, a Schedule II narcotic, clinics), to allowing physicians with very little training in the use of Suboxone and opioid addiction treatment to prescribe Suboxone.

14. Reckitt knew its profits would skyrocket if it was allowed to market Suboxone to all physicians, rather than only to highly-regulated clinics.

15. After the passage of the Drug Addiction Treatment Act of 200, Suboxone was Approved and went on the market in the United States in 2002.

16. Suboxone may help to eliminate or lessen the effects if opioid withdrawal;

however, undesirable effects can occur both while a user is taking Suboxone and after discontinuing the medication.

17. The side effects of Suboxone can include severe and long-term negative consequences.

18. Suboxone was negligently and intentionally promoted by Defendants as a non-threat, despite evidence to the contrary. Defendants marketed Suboxone as a safe treatment for long-term maintenance, which proved to be detrimental by prescribing narcotics to opioid addicts over long periods of time.

19. Injuries, including increased addiction and death, have resulted from the negligence of Defendants in promoting, marketing, producing and selling Suboxone.

## JURISDICTION AND VENUE

20. This honorable Court has original jurisdiction pursuant to 28 U.S.C. § 1332. The Plaintiff in this case is a resident of Union County, Mississippi and all actions occurred in the Northern District of Mississippi. As stated above, the Defendants are foreign corporations operating with registered agents in the State of Mississippi and doing business in the State of Mississippi, including Union County, Mississippi. As such, diversity and amount of controversy jurisdiction exists in this case and venue is proper in the Northern District of Mississippi, Oxford Division.

## FACTUAL ALLEGATIONS

21. Like thousands of other Mississippians, Lauren began taking highly addictive opioids in high school, which then led to opioid addiction.

22. Suboxone was and is marketed as a cure and/or treatment for opioid dependence. However, Suboxone is a potentially dangerous opioid in and of itself, often resulting in Suboxone

5

addiction and side effects.

23. The Defendants misrepresented and/or negligently promoted that Suboxone was a safe drug appropriate for long term use to treat opioid addiction. These statements were false, and the defendants intentionally and/or negligently hid the risks of prescribing these medications for long term use and misled consumers as to the possible and probable effects of Suboxone.

24. The Defendants also minimized the significant symptoms of opioid withdrawal—which include drug cravings, anxiety, insomnia, abdominal pain, vomiting, diarrhea, sweating, tremor, tachycardia (rapid heartbeat), and the unmasking of anxiety, depression, and addiction—which occurred in those who tried to stop taking Suboxone.

25. The Defendants negligently and grossly understated the difficulty of tapering Suboxone, particularly after long-term opioid use.

26. Lauren graduated from The University of Mississippi and worked as a sociology instructor at Itawamba Community College in Fulton, Mississippi.

27. Lauren was married to David Eric Smith, and she and Smith had a daughter, Esme Grace Smith.

28. In October 2015, Lauren began taking Suboxone, by prescription, in an effort to treat her opioid dependence.

29. Lauren became addicted to Suboxone and other opioids from her use of Suboxone.

30. Lauren and her unborn child died on June 24, 2017, from an opioid overdose. At the time of death, her unborn son was approximately 30 weeks of age, and Lauren had felt him moving inside of her during her pregnancy. An ultrasound had been performed to indicate the gender, male, of the unborn child.

31. At the time of Lauren's death, Esme was fourteen months old.

32. Lauren and her unborn son were survived by her husband, daughter and her mother, Betty Moore Williams.

33. The Defendants' actions in manufacturing, marketing, and distributing Suboxone Lauren caused physical suffering, caused her opioid dependence to worsen, resulted in psychological stress and anxiety as a result of her inability to cease taking these opioids and, ultimately, caused her death and that of her child.

## CAUSES OF ACTION

### I. NEGLIGENCE

34. The allegations of the foregoing paragraphs are hereby restated and incorporated by reference. Causes of action are stated on behalf of the Plaintiff, individually and on behalf of Lauren and the child, against Defendants.

35. Defendants acted with negligence as a reasonably prudent person would not have acted as did Defendants in promoting, marketing, manufacturing and selling Suboxone.

36. Defendants had a duty to conform to the standard of care of a pharmaceutical company manufacturing, marketing, promoting and selling a drug to known opioid abusers and addicts.

37. Defendants breached the duty to protect against unreasonable risk of injury based on the prolonged use of Suboxone for recovery of addiction as well as the use of Suboxone to limit withdrawal symptoms from opioids.

38. Defendants are liable to Plaintiffs for actual, compensatory and punitive damages.

39. At all relevant times, the Defendants had a duty to exercise reasonable care in manufacturing, distributing and marketing opioid medications in Mississippi, where Lauren took Suboxone and she and her child died.

40. The Defendants negligently misrepresented, understated or hid the highly addictive propensities of opioid medications generally and used unsafe marketing practices with Suboxone. Further, the defendants failed to warn or advise the prescribing physicians of the addictive qualities of Suboxone.

41. By engaging in negligent conduct that created an unreasonable risk of harm to Lauren and her child, Defendants failed to exercise reasonable care to prevent known and potential harms that were actually inflicted upon Lauren and her child.

42. The Defendants' actions in manufacturing, marketing, and distributing the opioids to Lauren and her medical providers in order to treat her opioid addiction made worse her long-term dependence on opioids, causing her, her child and her husband, David Smith, irreparable harm.

43. Reasonably prudent manufacturers of opioids such as Suboxone would anticipate the damages that would befall Lauren and her child as a direct result of the opioid medications obtained by Lauren and would have taken action to prevent such harm and damages.

44. The Defendants, individually and jointly, failed to exercise reasonable care by providing Lauren with opioid medications in an excessive quantity for an excessive period of time and negligently failing to disclose the true nature and significant risks associated with the opioid medications that she was taking.

45. Defendants' breach of duty, individually and jointly, caused the injury and death of Lauren and her unborn child and each Defendant is jointly and severally liable for the damages to Lauren as a result of the negligence of the Defendants.

46. Therefore, Defendants are liable for the damages caused to Plaintiffs by

their opioid products' unreasonably dangerous and defective design and negligently inadequate warnings of their opioids' addictive properties.

## II. PRODUCTS LIABILITY

47. Plaintiff reasserts the allegations in the foregoing paragraphs as if fully set out herein.

48. At all times material to this action, Defendants were engaged in the business of the design, development, manufacture, testing, packaging, promotion, marketing, distribution, labeling, and/or sale of Suboxone.

49. At all times material to this action, Suboxone was expected to reach, and did reach, consumers in Union County, Mississippi, including Lauren, without substantial change in the condition in which it was sold.

50. Defendants knew that the damage causing characteristics of Defendants' product include its addictive properties on patients and the associated health risks with over utilizing these drugs.

51. Defendants knew that prolonged use of opioids leads to decreased effectiveness, requiring increases in doses to achieve the same level of pain relief, markedly increasing the risk of significant side effects and addiction. Defendants conducted studies documenting these risks, yet failed to publish the results or warn of the documented risks.

52. The risks of opioid addiction are grave, and Defendants had a duty to warn about these risks.

53. Providing such warnings would have been easily feasible but would have interfered with Defendants' marketing efforts. Instead, Defendants promoted falsehoods and minimized the risk of addiction and withdrawal from long term opioid use.  The failure to warn or adequately

warn of known risks, dangers, and side effects were not only negligent but also were a violation of the product/strict liability laws of the state of Mississippi.

54. Defendants' products were unreasonably dangerous at the time they left the control of Defendants because of inadequate warning.

55. The opioid product manufactured and/or supplied by Defendants were defective in design in that an alternative design exists that would have prevented addiction.

56. A reasonably prudent manufacturer or seller would not have put Defendants' products on the market had it known of the products' dangerous condition and/or defective design.

57. Therefore, Defendants are liable for the damages caused to Lauren and the Plaintiff Smith by their opioid products' unreasonably dangerous and defective design and inadequate warnings of their opioids' addictive properties.

### III. **LOSS OF CONSORTIUM**

58. Plaintiff reasserts the allegations in the foregoing paragraphs as if fully set out herein.

59. Because of the actions of Defendants, Smith has suffered the loss and deprivation of the relationship he shared with Lauren.

60. Smith lost the love and affection, society and companionship, sexual relations, and other support Lauren provided to him both while she suffered from the effects of Suboxone during her life and after her death, proximately caused by the use of the drug, Suboxone.

61. Defendants are liable for the damages caused to Plaintiff Smith based on the loss of consortium he experienced.

## DAMAGES

62. The allegations of the foregoing paragraphs are hereby restated and incorporated by reference. Causes of action are stated on behalf of the Plaintiff against Defendants for negligence, strict liability in tort, failure to warn, intentional and/or grossly negligent misrepresentation, fraudulent concealment, breach of warranty, breach of express warranties, breaches of implied warranties of fitness and merchantability and gross negligence. Defendants are liable to Plaintiff for actual, compensatory and punitive damages.

63. Plaintiff Smith, individually, is entitled to recover in this action all damages proximately caused by the deaths of his wife, Lauren Lee Smith, and her unborn child, and for the acts and omissions of Defendants.

64. Defendants are liable for all elements of damages arising from the deaths of Lauren and the child, including:

   a. Damages for the physical pain and suffering of Lauren prior to her death;
   b. Damages for the mental anguish and horror suffered by Lauren prior to her death;
   c. Damages for the losses of financial support and maintenance which Lauren would have provided to Plaintiff Smith;
   d. Damages for the loss of love, companionship, society, advice and care of Lauren the Plaintiff Smith suffered and will suffer in the future;
   e. Damages for the funeral expenses resulting from the death of Lauren;
   f. Damages for the value of the life of Lauren;

g. Damages for the severe psychological, physical and emotional distress suffered by Plaintiff Smith arising from the death of Lauren;

h. Damages for all other losses, both economic and intrinsic, and tangible and intangible arising from the death of Lauren;

i. Damages for the physical pain and suffering of Lauren and Plaintiff's unborn child prior to his death;

j. Damages for the mental anguish and horror suffered by Lauren and Plaintiff's unborn child prior to his death;

k. Damages for the losses of financial support and maintenance which Lauren Lee Smith and Plaintiff's unborn child would have provided to Plaintiff;

l. Damages for the loss of love, companionship, society, advice and care of Lauren Lee Smith and Plaintiff's unborn child the Plaintiff suffered and will suffer in the future;

m. Damages for the value of the life of Lauren Lee Smith and Plaintiff's unborn child;

n. Damages for the severe psychological, physical and emotional distress suffered by Plaintiff arising from the death of Lauren Lee Smith and Plaintiff's unborn child;

o. Damages for all other losses, both economic and intrinsic, and tangible and intangible arising from the death of Lauren Lee Smith and Plaintiff's unborn child;

p. Past pain and suffering;

q. Past medical expenses;

    r.    Extreme mental anguish and emotional distress;

    s.    Punitive damages; and

    t.    Other damages to be shown during discovery and at trial.

Further, Defendants, whose actual malice and gross negligence and negligence per se in concealing the dangerous and addictive propensities of the opioids from the general public, including Lauren Lee Smith, evidences a willful, wanton and reckless and negligent disregard for the safety of others and are liable for punitive damages, extra-contractual damages, attorney's fees and pre-judgment interest and costs.

WHEREFORE, Plaintiff demands judgment against Defendants for all damages sustained as a result of the deaths of Lauren Lee Smith and the unborn child. Plaintiff further demands judgment for punitive damages, extra-contractual damages, attorney's fees, pre-judgement and post-judgment interest and costs due to their knowingly and willfully concealing the dangerous nature of their products. Plaintiff respectfully requests the Court enter judgment against Defendants for actual damages to Plaintiff in the amount of Ten Million Dollars ($10,000,000.00); and punitive damages in the amount of Twenty Million Dollars ($20,000,000.00).

Respectfully submitted, this the 23rd day of June, 2020.

/s/ Kimberly P. Simoes
KIMBERLY P. SIMOES, MSB# 10251
*Counsel for Plaintiff*

OF COUNSEL:

SIMOES DAVILA, PLLC
117 N. BROADWAY
TUPELO, MS 38802
(662) 821-1719
kimberly@simoeslaw.com

/s/ Stephanie Smith Woodard
STEPHANIE SMITH WOODARD, MSB# 105882
*Counsel for Plaintiff*

OF COUNSEL:
WOODARD LAW FIRM, LLC
501 7th Street North, Suite 8
Columbus, MS 39701
(662) 574-8824
woodardlawllc@gmail.com

SERVE DEFENDANTS:

Indivior Inc.
Corporation Service Company
7716 Old Canton Rd., Suite C
Madison, MS 39110

Reckitt Benckister Healthcare (UK) Ltd.
Corporation Service Company
7716 Old Canton Rd., Suite C
Madison, MS 39110

Indivior PLC
Corporation Service Company
7716 Old Canton Rd., Suite C
Madison, MS 39110

Indivior Solutions, Inc.
Corporation Service Company
7716 Old Canton Rd., Suite C
Madison, MS 39110

Mylan Inc.
C.T. Corporation System
645 Lakeland East Drive Ste. 101
Flowood, MS 39232

Mylan Pharmaceuticals, Inc.
C.T. Corporation System
645 Lakeland East Drive Ste. 101
Flowood, MS 39232

Hikma Labs Inc.
C.T. Corporation System
645 Lakeland East Drive Ste. 101
Flowood, MS 39232